## FORGED ENDORSEMENTS OF CHECKS.

Common Pleas Court of Putnam County.

J. F. JONES' SONS v. THE PEOPLES BANK COMPANY OF COLUMBUS.
GROVE, OHIO.

Decided, February 15, 1913.

*Negotiable Instruments—Depositor Induced to Draw Checks to Order of Fictitious Persons—Liability of Bank for Payment of Such Checks on Forged Endorsements—Ordinary Care on the Part of Depositor and of Bank.*

1. The rule of law that a negotiable instrument made payable to a fictitious person or order is, in effect, an instrument payable to bearer and needs no endorsement to pass it to another in the commercial world and affairs, applies only where it is so made with the knowledge of the party making it and does not apply where the maker or makers, supposing the payee to be a real person and intending payment to be made to such person or his order, is induced by the fraud of another to so draw it.

2. Where, by the fraud of a third person, a depositor of a bank is induced to draw his check payable to a non-existing person or order, the drawer or maker being in ignorance of the fact and intending no fraud, the bank on which the check is drawn is not authorized to pay it and charge the amount of the instrument so drawn to the account of its customer on the endorsement of the party presenting it, although the instrument appears to have been previously endorsed by the party named as payee. Such endorsement is in effect a forgery, and the payment thereon by the bank confers no right on it as against the maker or drawer of the instrument—the check.

3. In the absence of a course of dealing or understanding to the contrary between the parties, that is. as between the drawer of the check and the bank paying it, the duty of the banker is, in all cases, to pay the check to the person named or his order where the terms of the check are such; and the bank may and should withhold payment of the check until fully satisfied as to the genuineness of the endorsement.

4. The ordinary rule of law is that a bank is bound to know the signature of its depositor before it is authorized to pay a check drawn by such a depositor to the order of a person named therein, and

this rule is fixed to protect the rights of the depositor. But if the carelessness of the depositor and his want of ordinary care contributed to the deception of the bank, such person would not be in a position legally to enforce such general rule against the bank.

5. Where one of two interested persons or parties must suffer because of a fraud or forgery committed or perpetrated, justice imposes the burden upon him who is the first in fault and put in operation the power which resulted in the fraud or forgery.

6. It is the depositor's duty, when his pass book has been written up and returned to him with the checks charged to his account, to examine them within a reasonable time thereafter and report any forgeries discovered. After the lapse of a reasonable time a presumption arises that the checks of the depositor issued against his bank are correct, and the depositor having failed to examine them at a proper time can not recover from the bank the amount paid on checks subsequently discovered to be forgeries without proving that the bank could have, by the use of ordinary care, detected such forgery.

*H. D. Grindle* and *Kent W. Hughes,* for plaintiffs.

*Handy & Unverferth, W. H. Leete, H. S. Core* and *J. O. Ohler,* contra.

SCOTT, J.

The issues in this case arise upon the pleadings of the parties to the suit. On the second day of March, 1911, the plaintiffs, C. H. Jones and G. E. Jones, partners doing business under style and firm name of J. F. Jones' Sons, filed in this case their petition against the defendant, the Peoples Bank Company of Columbus Grove, Ohio, a corporation, and the plaintiffs say in substance in their pleading that the defendant is a banking corporation organized and existing under the laws of the state of Ohio, owning and conducting a bank at Columbus Grove, Ohio; that these plaintiffs had on deposit with said defendant subject to be drawn out by their check at all times hereinafter mentioned a sum of money greater than the amount of the several checks hereinafter named and described and greater in amount than the aggregate of said checks hereinafter described.

That on June 29th, 1909, plaintiffs drew their check in the sum of one hundred dollars, payable to D. A. Earnest or order

and drawn on the defendant; that on July 3, 1909, plaintiffs drew their check in the sum of three hundred and sixty-five dollars, payable to Fred Reidy or order and drawn on the defendant; that on July 17th, 1909, plaintiffs drew their check in the sum of ninety dollars, payable to E. Jones or order and drawn on the defendant; that on July 17th, 1909, plaintiffs drew their check in the sum of two hundred dollars payable to O. S. Sherman or order and drawn on the defendant; that on July 30th, 1909, plaintiffs drew their check in the sum of four hundred and twenty-five dollars payable to George E. Charles or order and drawn on the defendant; that on August 2d, 1909, plaintiffs drew their check in the sum of four hundred and seventy dollars payable to W. H. Jones or order and drawn on the defendant; that on September 27th, 1909, plaintiffs drew their check in the sum of one hundred and twenty dollars payable to C. Balmer or order and drawn on the defendant; that on September 30th, 1909, plaintiffs drew their check in the sum of one hundred dollars payable to John Wilch or order and drawn on the defendant; that on October 13th, 1909, plaintiffs drew their check in the sum of two hundred and ten dollars payable to F. Jones or order and drawn on the defendant; that on January 31st, 1910, plaintiffs drew their check in the sum of five hundred and fifty dollars payable to John Rossman or order and drawn on the defendant.

Each and all of the above described checks it was alleged had been procured from these plaintiffs by the fraudulent practices and false representations of one V. B. Pangle, practiced upon these plaintiffs and without any knowledge upon their part, and said checks and each of them were delivered to said V. B. Pangle to be by him delivered to the respective payees named in said checks; that said payees and each of them were fictitious persons except C. Balmer and that there was no such person or persons as said payees or either of them except C. Balmer, but that said fact was unknown to these plaintiffs at the time and for a long time thereafter and after said checks had been paid by said defendant.

Plaintiffs supposed and believed at the time said checks and each of them were drawn that the respective persons named

therein as payees were real persons, and believed and supposed that said V. B. Pangle would deliver said checks and each of them to the respective persons named therein as payees; that each of said checks was endorsed on the back thereof by the endorsement of the name of the payee named therein, which endorsements and all of them of said pretended or fictitious names and of C. Balmer were forged or fraudulently or wrongfully placed on said checks by said V. B. Pangle or some other persons unauthorized in the premises.

Thereafter said checks and each of them were presented to the defendant at its bank at Columbus Grove, Ohio, who paid said checks and each of them and charged the same against the account of plaintiffs; that these plaintiffs before the commencement of this action, to-wit, on the 20th day of January, 1911, informed said defendant of the foregoing facts and circumstances and demanded the payment of the sum of the amount of said checks, to-wit, twenty-six hundred and thirty dollars, to them; but that said defendant then refused and has not either before or since said demand paid the same or any part thereof to plaintiffs.

Wherefore, plaintiffs pray judgment against the defendant in the sum of twenty-six hundred and thirty dollars with interest from January 20th, 1911.

To the petition the defendant on November 20th, 1912, filed its answer in which it says in substance, that it is a banking corporation organized and existing under the laws of the state of Ohio; that the plaintiffs during all the time named in the petition had on deposit with the defendant varying sums of money; that the plaintiffs at the time named drew said several checks against their account in the said defendant's bank, that said several checks were in due time paid to the holders by banks other than this defendant, and that in due course said checks came to the defendant duly endorsed and were paid by it, and charged to the plaintiff's account; and defendant denies each and every other allegation of fact contained in said petition.

The defendant further says that if it shall be found that the said checks described in the petition, or any of them, were ob-

tained from plaintiffs by the fraudulent practices of the said V. B. Pangle, then plaintiffs were guilty of a want of ordinary care and diligence in executing and delivering said checks and each of them to said V. B. Pangle, and that in the exercise of due care, under the circumstances, plaintiffs could, would and should have discovered said fraud and each of them. Said defendant further says that the check described in said petition, payable to John Rossman, or order, in the sum of $550 and dated January 31, 1910, was, prior to February 3d, 1910, paid to the bank through which it was received, by said defendant, and charged to the account of plaintiffs, and that on or about February 3rd, 1910, a statement of the payment of said check, was made to plaintiffs, and that the check returned to them, from which said time said check has remained in possession of said plaintiffs and no one else; that the check dated June 29th, 1909, for $100, payable to D. A. Earnest, or order, and that of July 3d, 1909, for $365, payable to Fred Reidy, or order, and that of July 17th, 1909, for the sum of $90, payable to E. Jones, or order, and that of July 17th, 1909, for the sum of $200, payable to O. S. Sherman, or order, were each and all paid to the said banks from which they were received by the defendant prior to July 23d, 1909, and that on or about the 3d day of August, 1909, a statement of the payment of said checks was made by said defendant to plaintiffs and each and all of said checks then and there returned to plaintiffs, from which time each and all of said checks have been and remained in the possession of plaintiffs, and no one else; that the check dated July 30th, 1909, for $425, payable to George E. Charles, or order, and that of August 2d, 1909, for the sum of $470, payable to W. H. Jones, or order, were each of them paid by the banks through which they were received and charged to the account of plaintiffs prior to August 4th, 1909, and that on or about the 3d day of September, 1909, this defendant made a statement of the payment of said checks to the plaintiffs, and each and all of said checks were then and there returned to plaintiffs, from which time each and all of said checks have been and remained in the possession of plaintiffs, and no one else; that the check dated September 27th, 1909,

for the sum of $120, and payable to C. Balmer, or order, and the check dated September 30th, 1909, in the sum of $100, payable to John Wilch, and the check dated October 30th, 1909, in the sum of $210, payable to E. Jones, or order, were each and all paid by the defendant to the banks through which they were received prior to October 15, 1909, and that on or about November 3d, 1909, this defendant made a statement to the plaintiffs of the payment of said checks, and all of said checks were then and there returned to plaintiffs, from which time each and all of said checks have been and remained in possession of the plaintiffs, and no one else; that on said dates aforesaid, to-wit: on the 3d day of August, the 3d day of September, the 3d day of November, 1909, and the 3d day of February, 1910, and each of them, the plaintiffs and defendant settled the existing account between them, and that more than one year elapsed from the time of said settlement prior to the commencement of this action and before any notice to or any action was begun on this defendant for said sum of money.

Defendant further says that the plaintiffs ought not to have and maintain said action, because if it shall be found in this case that said checks or any of them were obtained by the fraudulent practice of the said V. B. Pangle, the plaintiffs could, by the use of ordinary diligence and care, and should have discovered within ten days after the giving of said checks, that they had been defrauded, and that the plaintiffs were careless and negligent in not making said discoveries and each of them within said time; and that the giving of each check of date of June 29th, 1909, to D. A. Earnest, or order, for the sum of $365, was negligent, and with knowledge chargeable to the said defendants; that the said V. B. Pangle was obtaining said checks by fraudulent practices and with intent to cheat and defraud; and that if any of the said checks were obtained by fraudulent practices, by the said V. B. Pangle, it was without the knowledge of this defendant, and without the knowledge of circumstances to put this defendant on inquiry, and that each and all of said checks were paid by this defendant in good faith and in due course.

Defendant further says that the said V. B. Pangle was in the employ of the said plaintiffs during all of said time in the pur-chase of timber and other merchandise for the plaintiffs and was held out by the plaintiffs to the defendant to be their agent with authority to act for them.

Defendant further says that said plaintiffs in each and all of said transactions were guilty of a want of care and diligence and are estopped from prosecuting this suit upon the cause of action set forth in the petition, because at the time each of said checks were paid and said statements made by plaintiffs to defendant, and said checks returned as aforesaid, the said V. B. Pangle filed his petition, and was declared a bankrupt by the District Court of the United States for the Northern District of Ohio, Western Division, and that said Pangle became insol-vent long after the payment of said checks, and that during all of the time from July 3d, 1909, to February 3d, 1910, the amount represented by said checks and each of them could have been collected of the said Pangle, and during all of said time said plaintiffs had ample opportunities, by use of any diligence, to discover said fraud and recovering of said Pangle the amount of said checks and each of them during all of said time, and that without reason and without knowledge of facts to put them on inquiry, said plaintiffs trusted said Pangle and permitted him to accumulate indebtedness and become insolvent; and that plaint-iffs failed, during all of said time, to notify the defendant of said fraudulent practices and that said checks were not genuine checks properly endorsed, whereby said defendant was prevented from protecting itself against said claim and from recouping from said V. B. Pangle; and that the said plantiffs failed to notify said defendants until immediately before the beginning of this suit of any claim that said checks were wrongfully paid, whereby defendant says plaintiffs are estopped from prosecuting this action.

Defendant further says that at the several dates mentioned in plaintiffs' petition as being the dates of the several checks issued and made by said plaintiffs, and at all times after the 29th day of June, 1909, until some time after the 31st day of January,

1910, the said V. B. Pangle was the agent, servant and employe of plaintiffs, and engaged in acting for them in the purchase of supplies for their manufacturing business, and several checks were issued by plaintiffs either in payment for supplies before that time purchased by said Pangle for plaintiffs or were given to said Pangle on account of supplies to be made by said Pangle, purchase for plaintiffs, and that said plaintiffs received either from said Pangle or other person or persons, value for each of said several checks, and plaintiffs suffered no loss whatever by reason of the execution and delivery of said checks and the subsequent payment thereof by defendant.

The defendant further says that each and all of said checks were drawn after June 29th, 1909, and that by drawing said checks and each of them and delivering possession thereof to the said V. B. Pangle, said defendant then and there admitted and guaranteed that said payees, in said checks, and each of them, were then in existence and not fictitious persons and that they were capable of endorsing said checks and each of them.

Wherefore, this defendant prays that the petition of plaintiffs herein be dismissed, and that it recover its costs herein, and for all other relief.

To that answer the plaintiffs on February 12th, 1912, filed their reply, denying each and every allegation in defendant's answer, except those allegations that are admissions of the averments contained in plaintiffs' petition. Wherefore plaintiffs pray as in their petition set forth.

The case was tried to a jury, who were instructed by Judge Scott as follows (omitting those portions of the charge applicable to civil cases generally):

"I charge you, gentlemen of the jury, that the rule of law that a negotiable instrument made payable to a fictitious person or order is, in effect, an instrument payable to bearer and needs no endorsement to pass it to another in the commercial world and affairs, applies only where it is so made with the knowledge of the party making it and does not apply where the maker or makers, supposing the payee to be a real person intending payment to be made to such person or his order, is induced by the fraud of another to so draw it.

"Where, by the fraud of a third person, a depositor of a bank is induced to draw his check payable to a non-existing person or order, the drawer or maker being in ignorance of the fact and intending no fraud, the bank on which the check is so drawn is not authorized to pay it and charge the amount of the instrument so drawn to the account of its customer on the endorsement of the party presenting it, although the instrument appears to have been previously endorsed by the party named as payee. Such endorsement is in effect a forgery, and the payment thereon by the bank confers no right on it as against the maker or drawer of the instrument, the check.

"In the absence of a course of dealing or understanding to the contrary between the parties, that is, as between the drawer of the check and the bank paying it, the duty of the banker is, in all cases, to pay the check to the person named or his order where the terms of the check are such; and the bank may and should withhold payment of the check until fully satisfied as to the genuineness of the indorsement. But, this rule of law, as enunciated and handed down to us by the highest legal tribunal of our state, must be used and can obtain only in cases where the facts fit it. Whether it may be followed and adhered to in any particular case, depends entirely and solely upon the facts of each particular case in which the rule is sought to be invoked.

"The ordinary rule of law is that a bank is bound to know the signature of its depositor before it is authorized to pay a check drawn by such depositor to the order of a person named therein, and this rule is fixed to protect the rights of the depositor, but if the carelessness of the depositor and his want of ordinary care contributed to the deception of the bank, such person would not be in a position legally to enforce such general rule against the bank.

"It therefore becomes important in this case, to determine from and in the light of all of the evidence and circumstances in this case, whether the plaintiffs, doing business under the style and name of J. F. Jones Sons, as well as the defendant bank, are free from negligence in the matter of the several and numerous transactions shown by the evidence to have been had by and between them, as well as the several and many transactions shown to have been had by and between the plaintiffs and the man Pangle.

We have another salutary rule of law that may be applied, and that rule briefly stated is, that where one of two innocent persons or parties must suffer because of a fraud or forgery committed or perpetrated, justice imposes the burden upon him who is the first in fault and put in operation the power which

resulted in the fraud or forgery. It is not every wrong for which the law provides a remedy, but only such wrongs that the law recognizes as remedial.

"And so, in arriving at your conclusion in this cause, naturally you will be led along the lines of your investigations to inquire, in the light of all of the evidence and circumstances in the case, into the conduct of the plaintiffs and the defendant bank, and also into the conduct of the plaintiffs relative to the several alleged transactions involved in this controversy and suit, the putting in passage, commercially, the several checks in question in this suit.

"Were these exhibits A to J, these checks, or any of them, issued by the plaintiffs to persons, as payees, then unknown to them? Were they issued in the names of fictitious persons or their order, and were they issued without fraud, and did the plaintiffs at the time or times of the issuing of said checks suppose the several payees thereof to be real persons, intending payment or payments of said checks, or any thereof, to be made to such person or persons or his or their order? Are the endorsements on said checks or any thereof, forgeries? Did the alleged several payees, or any of them, receive the money on said checks or any of them? Did the said several alleged payees named in said checks, or any of them, receive the money on any of the several checks in question in this case or did they not?

"If you shall find by a preponderance of the evidence in the case that any of said several payees did receive the money on any of said several checks by endorsing the same and obtaining the sum or sums of money named in any of said checks, then it is wholly immaterial, so far as this cause is concerned. whether the plaintiffs obtained the timber or property or any thereof, for which said checks or any thereof were given in payment, if they or any thereof were issued and delivered to be used in payment of any timber alleged to have been purchased by the man Pangle, either for himself or said plaintiffs.

"Enquire into the transactions and relations of the plaintiffs and the man Pangle as they have been depicted and portrayed by the evidence and circumstances in this case. Was the man Pangle the agent or representative of the plaintiffs in the matter of the several transactions and dealings shown by the evidence and circumstances in the case to have been had by and between the plaintiffs and Pangle? Was Pangle clothed with authority to act for the plaintiffs in and about the several alleged transactions involving the issuing and delivery of the said several checks in question herein? Did the plaintiffs, as such partners, use or exercise ordinary care and prudence relative to the alleged.

several acts and transactions of the said plaintiffs and said Pangle? Or, does the evidence and circumstances in the case show that the said plaintiffs were negligent in any or all of the matters and things in dispute and controversy in this action?

''If you shall find, gentlemen, by a preponderance of the evidence in the case that the man, V. B. Pangle, was the agent or representative of the plaintiffs and acting for them ,as such at the time, or times when it is alleged the plaintiffs executed the several checks in question and delivered them to the said Pangle, by him to be delivered thereafter to the said several payees named in said checks, and that the plaintiffs, by so treating and dealing with and through said Pangle placed it in the power of said Pangle to defraud the said plaintiffs in the matter of the said issuing and delivery of said several checks, and in the matter of the alleged forgeries, by endorsement, of said checks, and that the defendant bank had no knowledge or notice of the relations, if any, at the time or times mentioned, existing between the plaintiffs and said Pangle in the matter of the issuing, passing and endorsing of said checks, and further that the plaintiffs did not use ordinary care and prudence in the matter of its alleged dealings and transactions with said Pangle and in the matter of the issuing and delivery of said several checks, then the plaintiffs can not recover in this action and your verdict should be for the defendant.

''In determining this question, among other things to be determined in this case by you, and in arriving at your conclusion as jurors as to whether or not the plaintiffs exercised and used ordinary care in relation to their several transactions with said Pangle and said defendant relative to the issuing, delivering, passing and payment of said several checks, or any of them, you may take into consideration the length of time the evidence may show the plaintiffs to have had business relations with said Pangle and said defendant, and also the manner and method by which the plaintiffs treated and dealt with said Pangle and said defendant, and from all of the evidence and circumstances in the case determine as honest jurors whether or not the plaintiffs, as well as the defendant bank, were guided by the exercise of ordinary care and prudence in relation to the varied and numerous transactions shown by the evidence to have been had between the parties to the case, and between the plaintiffs and said Pangle. In arriving at your conclusion in this case, you may and you should consider, among other things, the character and nature of the transactions shown to have taken place by and between the plaintiffs and the man Pangle, and you may consider the nature of the transactions relative to the issuing and delivery

of said checks, and whether or not said checks were charged to the account, if any existed, against said Pangle, upon the books or records of said plaintiffs, and use all such information as you may have at your command, based, of course, upon the evidence and circumstances in the case, to the end that equal and exact justice may be meted out to the parties to this action.

"I charge you that it is the depositor's duty, when his pass book has been written up and returned to him with the checks charged to his account, to examine them within a reasonable time thereafter and report any forgeries discovered.

"After the lapse of a reasonable time a presumption arises that the checks of the depositor issued against his bank are correct, and the depositor having failed to examine them at a proper time can not recover from the bank the amount paid on checks subsequently discovered to be forgeries without proving that the bank could have by the use of ordinary care, detected such forgery.

"Could the plaintiffs, by the exercise or use and application of ordinary care, relative to and in the matter of these several alleged transactions about and concerning their dealing with said Pangle, and the issuing, passing and delivery of said several checks, have averted and avoided any or all of the alleged several crooked transaction on the part of said Pangle? Could the plaintiffs, by the use and exercise of ordinary care and prudence, have discovered any or all of the alleged several crooked transactions, as shown by and from the evidence, and checked or averted the acts as alleged of Pangle in time to have saved any or all of the disaster that is alleged to have befallen the plaintiffs or the defendant bank?

"All these questions are matters of grave importance to the parties to this suit and must be solved and determined by you in the light of the evidence in the case."

Thereupon the jury retired and in due time returned a verdict for the plaintiffs in the sum of $2,630, with interest at 4% from March 2, 1911, to November 4, 1912. Motion for new trial was filed by defendant and the same was refused and overruled by the court.